1
2
3
4
5
6
7

8                  UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10

11   LUKASIAN HOUSE, LLC,                 Case No. 2:11-cv-06449-JFW-FMO

12            Plaintiff,                  **[PROPOSED] STATEMENT OF**
                                          **UNCONTROVERTED FACTS**
13        vs.                             **AND CONCLUSIONS OF LAW**

14   AMPLE INTERNATIONAL, INC.,           **DATE:     April 23, 2012**
     CHEN CHEN a/k/a JANE CHEN,           **TIME:     1:30 P.M.**
15   APRILLE VERGARA,                     **CTRM:    16**

16            Defendants.                 **Hon. John F. Walter**

17                                        **Complaint Filed:        08/05/2011**
                                          **Discovery Cutoff Date: 04/01/2012**
18                                        **Pretrial Conf.:         06/08/2012**
                                          **Trial Date:             06/26/2012**
19

20
21
22
23
24
25
26
27
28

CHRISTIE, PARKER & HALE, LLP

Having read and considered the papers, arguments, and evidence presented by the parties with respect to Defendants' Motion for Partial Summary Judgment, the Court finds that the following facts are undisputed and makes the following conclusions of law:

**MATERIAL FACTS TO WHICH THERE IS NO GENUINE ISSUE**

| **Uncontroverted Fact** | **Supporting Evidence** |
|---|---|
| 1.   Plaintiff is an importer and distributor of baskets and hampers, which are primarily sourced from China. | Wang Dep. at 14:13-19, 15:1-3, 53:22-55:1 (Defendants' Summary Judgment Exhibit No. 7) (hereafter "DSJ Ex."); First Amended Complaint ("FAC") ¶¶ 10-12. |
| 2.   Plaintiff's business model is as follows: Factories in China contract with various local villages to produce basket and hamper products.   These factories are in turn represented by vendors having direct contact with distributors – such as Plaintiff – in the United States.   These distributors promote their basket and hamper products to large retail chains, usually by providing them samples of the product. | FAC ¶¶ 10-12; Declaration of Aprille Vergara ("Vergara Decl.")   ¶  4; Declaration of Jane Chen ("Chen Decl.") ¶ 4. |

CHRISTIE, PARKER & HALE, LLP

| **Uncontroverted Fact** | **Supporting Evidence** |
|---|---|
| 3.      When a retail customer purchases products from Plaintiff, it does so through Plaintiff; however, the products are often shipped directly from the supplier to the retailer. | Wang Dep. at 53:22-55:1 (DSJ Ex. 7); Vergara Decl. ¶ 5; Chen Decl. ¶ 5. |
| 4.      Aprille Vergara began working at Lukasian House, LLC ("LH") in May 2006. | FAC ¶ 3. |
| 5.      Jane Chen began working at Lukasian House, LLC in November 2008. | FAC ¶ 4. |
| 6.      During this time, they essentially built Plaintiff's business "from the ground up," handling all of the day-to-day operations, selecting suppliers and working with the suppliers to resolve issues when orders were not fulfilled properly or contained poor quality goods, soliciting customers, and developing new products. | Vergara Decl. ¶ 7; Chen Decl. ¶ 7. |
| 7.      Luke Wang is the founder and owner and member of Plaintiff. | FAC ¶ 10; Wang Dep. at 9:22-24, 16:5-7. (DSJ Ex. 7) |
| 8.      Mr. Wang spent much of his time working on other ventures and left most business operations to Ms. Chen and Ms. Vergara. | Vergara Decl. ¶ 6; Chen Decl. ¶ 6. |

CHRISTIE, PARKER & HALE, LLP

| **Uncontroverted Fact** | **Supporting Evidence** |
|---|---|
| 9.    All of the files needed to run Plaintiff's business – including the alleged trade secrets – were stored on Ms. Vergara's desktop computer. | Wang Dep. at 19:25-20:16, , 21:1-22:6, 25:17-26:11,   64:19-65:14;   Batygin Dep. at 16:18-17:18, 19:12-21:10 (DSJ Ex. Nos. 7 and 1). |
| 10.    All of Plaintiff's employees had ready access to Ms. Vergara's desktop computer. | Wang Dep. at 25:17-26:11, 28:6-29:2, 64:19-65:14,   89:1-90:16   96:19-24; Batygin Dep. at 17:9-22, 30:14-23 (DSJ Ex. Nos. 7 and 1). |
| 11.    Plaintiff had no encryption scheme to protect files on its computers. | Batygin Dep. at 30:14-23, 140:18-141:11 (DSJ Ex. 1). |
| 12.    Because their job duties usually required direct contact with China, Ms. Chen and Ms. Vergara frequently worked late hours, often from home. | Wang Dep. at 66:12-67:2 (DSJ Ex. 7); Batygin Dep. at 22:7-20, 28:12-30:5 (DSJ Ex. 1); Vergara Decl. ¶ 8; Chen Decl ¶ 8. |
| 13.    In about October 2009, Ms. Vergara purchased a personal laptop. | Wang Dep. at 78:22-79:5 (DSJ Ex. 7); DSJ Ex. 8 (laptop receipt); Batygin Dep. at 51:2-13 (DSJ Ex. 1); Vergara Decl. ¶ 9. |
| 14.    Plaintiff eventually reimbursed Ms. Vergara for this laptop as part of a performance bonus. | Wang Dep. at 79:6-12 (DSJ Ex. 7); Batygin Dep. at 51:2-21 (DSJ Ex. 1); Vergara Decl. ¶ 10. |
| 15.    Ms. Vergara downloaded various work-related files – including "trade secrets" – onto her laptop to better allow her to work from home. | Wang Dep. at 20:17-25, 85:3-87:16, 108:2-18 (DSJ Ex.7); Vergara Decl. ¶ 11. |

CHRISTIE, PARKER & HALE, LLP

| **Uncontroverted Fact** | **Supporting Evidence** |
|---|---|
| 16.    Ms. Vergara downloaded onto a portable hard disk numerous work-related files to facilitate performing her expansive job duties from home and as a secure backup. | Wang Dep at 121:18-122:9 (DSJ Ex. 7); Batygin Dep. at 28:12-30:5 (DSJ Ex. 1); Vergara Decl. ¶ 12. |
| 17.    Mr. Wang was at all times fully aware that Ms. Vergara was taking these files home. | Wang Dep. at 66:12-67:2, 85:3-87:12, 121:18-122:9 (DSJ Ex. 7); Batygin Dep. at 28:12-30:5 (DSJ Ex. 1); Vergara Decl. ¶¶ 11-13. |
| 18.    Mr. Wang was at all times fully aware that other employees were taking these files home. | Wang Dep. at 66:12-67:2 (DSJ Ex. 7); Batygin Dep. at 22:21-27:23 (DSJ Ex. 1) and Ex. 15 (DSJ Ex. 2). |
| 19.    Mr. Wang had Ms. Vergara download a complete copy of all of Plaintiff's files to a portable hard drive and bring it home with her as a secure backup. | Wang Dep. at 121:18-122:9 (DSJ Ex. 7); Vergara Decl. ¶ 13. |
| 20.    Ms. Vergara was instructed to download a complete copy of all of Plaintiff's files to a portable hard drive and bring it home with her as a secure backup when Mr. Wang planned to be out of town. | Wang Dep. at 121:18-122:9 (DSJ Ex. 7); Vergara Decl. ¶ 14. |

-5-

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 21.    When Ms. Vergara left Plaintiff's employ, Plaintiff did not ask Ms. Vergara to return the laptop, and because Ms. Vergara understood the laptop to be hers, she made no affirmative efforts to return it. | Vergara Decl. ¶ 15. |
| 22.    Ms. Vergara ended her employment with Plaintiff on June 11, 2010. | Vergara Decl. ¶ 3. |
| 23.    Ms. Chen ended her employment with Plaintiff on July 9, 2010. | FAC ¶ 4; Chen Decl. ¶ 3. |
| 24.    After Ms. Vergara left Plaintiff's employ, Mr. Wang tried to convince her to return. | Wang Dep. at 93:13-95:21 and Exhibit 22 (DSJ Ex. Nos. 7 and 9). |
| 25.    Mr. Wang sent Ms. Vergara a note on January 4, 2011 where he bragged about new customers Plaintiff had acquired since Ms. Vergara left the company and about the financial success of the company. | Wang Dep. at 93:13-95:21 and Exhibit 22 (DSJ Ex. Nos. 7 and 9). |
| 26.    Mr. Wang included numerous financial figures as well as the identities of new and pre-existing customers on the January 4, 2011 note. | Wang Dep. at 93:13-95:21 and Exhibit 22 (DSJ Ex. Nos. 7 and 9). |

CHRISTIE, PARKER & HALE, LLP

| **Uncontroverted Fact** | **Supporting Evidence** |
|---|---|
| 27. Before joining Plaintiff's business, Ms. Chen had run her own successful import and distribution business for toys and seasonal items. | Chen Decl. ¶ 9. |
| 28. Ms. Chen ceased operations of that business around 2006 due to health reasons. | Chen Decl. ¶ 10. |
| 29. While working for Plaintiff, Ms. Chen referred Plaintiff to many of her vendors from her prior business, including her ocean forwarder, customs broker, insurance company, and courier company. | Chen Decl. ¶ 11. |
| 30. These changes saved Plaintiff a substantial sum of money because its prior vendors had been charging it much higher rates. | Chen Decl. ¶ 12. |
| 31. In May 2010, Chen considered returning to her prior business due in large part to the poor working conditions at LH's business. | Chen Decl ¶ 13. |
| 32. Chen and Vergara began working together at Ample soon after they left LH. | Vergara Decl. ¶ 16; Chen Decl ¶ 14. |

CHRISTIE, PARKER & HALE, LLP

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 33.   Ms. Chen and Ms. Vergara tried to import numerous commodities in an effort to get the importation and distribution division of Ample up and running, and they even assisted Ms. Chen's husband with some real estate dealings on behalf of Ample. | Chen Decl. ¶¶ 15-16; Vergara Decl. ¶¶ 17-18. |
| 34.   The only success Ms. Chen and Ms. Vergara experienced was in their efforts to import baskets and hampers. | Chen Decl. ¶ 16; Vergara Decl. ¶ 18. |
| 35.   Ms. Vergara continued to use the personal laptop she had obtained during her employment with Plaintiff to operate the basket and hamper business at Ample. | Vergara Decl. ¶ 19. |
| 36.   Plaintiff sources its products from about fifty suppliers, with about twelve of these being its "core" suppliers. | Chen Decl. ¶ 17; Vergara Decl. ¶ 20. |
| 37.   Defendants source their products from six suppliers, two of which are not used by Plaintiff at all, three of which Plaintiff has occasionally used in the past, and only one of which is one of its "core" suppliers. | Chen Decl. ¶ 18; Vergara Decl. ¶ 21. |

CHRISTIE, PARKER & HALE, LLP

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 38.   Defendants use this supplier because it consistently provides the best quote for paper rope products, though they always seek bids from multiple suppliers. | Chen Decl. ¶ 19; Vergara Decl. ¶ 22. |
| 39.   Both Plaintiff and Defendants sell to large retail chain stores. | Chen Decl. ¶ 20; Vergara Decl. ¶ 23; Interrogatory Response No. 11 (DSJ Ex. 5). |
| 40.   Plaintiff has tried to undercut Defendants' business, including refusing to pay money it owes its suppliers if they do not agree to cease doing business with Defendants, buying Defendants' products out from under them, and telling Defendants' suppliers and customers that Defendants will not be able to stay in business, thus resulting in the suppliers charging Defendants extremely high deposits on their orders. | Vergara Decl. ¶ 24 and DSJ Ex. 15. |

CHRISTIE, PARKER & HALE, LLP

| **Uncontroverted Fact** | **Supporting Evidence** |
|---|---|
| 41.    Plaintiff has asserted that Defendants misappropriated trade secrets related to (a) the types of products each of its suppliers can produce; (b) the identities of Plaintiff's customers; (c) the identities of the buyers at each of Plaintiff's customers; (d) the buying cycles of each of Plaintiff's customers; (e) the identities of prospective customers; (f) Plaintiff's costs; and (g) Plaintiff's margins. | FAC ¶ 14. |
| 42.    Trade Data Services, Inc. operates a website accessible at www.importgenius.com. | Goodwin Decl. ¶ 2 and DSJ Ex. 10. |
| 43.    Trade Data Services advertises to its customers that it can provide information as to where their competitors source their products and promises that its "data reveals suppliers, product volumes, and industry trends for U.S. importers and distribution companies." | Goodwin Decl. ¶ 2 and DSJ Ex. 10. |

CHRISTIE, PARKER & HALE, LLP

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 44.    The information provided by Trade Data Services is actually collected by U.S. Customs / U.S. Department of Homeland Security and is publicly available. | Goodwin Decl. ¶ 3 and DSJ Exs. 10 and 11. |
| 45.    Ms. Chen was aware of Trade Data Services while she was employed at Plaintiff. | Chen Decl. ¶ 21 |
| 46.    A simple search for "Lukasian House" on this website resulted in a report showing Plaintiff's suppliers in China, their addresses, the dates goods purchased from this supplier arrived in the United States, the quantity of goods shipped, the weight and physical dimensions of the goods, a description of the goods (e.g., banana leaf baskets), and, in certain cases, the ultimate customer for whom the goods were destined. | Wang Dep. at 56:19-57:6, 58:12-59:19, 78:10-16 and Exhibit 19 to Mr. Wang's Deposition (DSJ Ex. Nos. 7 and 12, respectively); Goodwin Decl. ¶ 4. |
| 47.    Mr. Wang admitted at deposition that he is unsure exactly which employees, past or present, have trade secret information on their laptops. | Wang Dep. at 96:12-17 (DSJ Ex. No. 7). |

CHRISTIE, PARKER & HALE, LLP

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 48. Olga Batygin was employed by Plaintiff during portions of 2009 and 2010. | Wang Dep. at 63:22-64:11, 119:4-120:2; Batygin Dep. at 8:11-9:1 (DSJ Ex. Nos. 7 and 1). |
| 49. Plaintiff hired Ms. Batygin as an independent contractor and issued Form 1099 instead of a W-2. | Wang Dep. at 68:23-70:5, 119:4-120:2; Batygin Dep. at 10:18-11:21 (DSJ Ex. Nos. 7 and 1). |
| 50. During Ms. Batygin's employment, no firewall was installed to protect Ms. Vergara's desktop computer at Plaintiff from unauthorized remote access. | Batygin Dep. at 17:23-18:12 (DSJ Ex. 1). |
| 51. Ms. Batygin testified that, based on her experience at Caltech, Plaintiff's computer system was readily accessible by anyone from the outside, so much so that even her brother has the necessary skills to access and download the files. | Batygin Dep. at 17:23-18:12 (DSJ Ex. 1). |
| 52. Plaintiff's employees would frequently email files to their personal email accounts and download them to their personal computers at home. | Batygin Dep. 22:21-23:11 (DSJ Ex. 1). |
| 53. None of Plaintiff's electronic or physical files were marked as confidential. | Wang Dep. at 122:19-123:11; Batygin Dep. at 30:6-13 (DSJ Ex. Nos. 7 and 1). |

-12-

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 54.    Mr. Wang was at all times aware that Plaintiff's employees were taking electronic files home. | Wang Dep. at 66:12-67:2; Batygin Dep. 23:12-16, 23:24-24:20, 27:8-23 (DSJ Ex. Nos. 7 and 1). |
| 55.    In general, Plaintiff's employees were not cautioned to be careful about taking sensitive information home. | Batygin Dep. 23:17-23, 27:4-7 (DSJ Ex. 1). |
| 56.    Plaintiff's employees were not instructed to delete files from their personal computers after using them. | Batygin Dep. at 23:24-24:20, 27:8-23 (DSJ Ex. 1). |
| 57.    Defendants are aware of at least 11 past employees of Plaintiff. | Response to Interrogatory No. 1 (DSJ Ex. No. 5). |
| 58.    Ms. Batygin had at one time strongly urged Plaintiff to at least purchase relatively inexpensive software that would allow Plaintiff to have encrypted communications with suppliers in China.  Plaintiff declined to make this minimal investment. | Batygin Dep. at 140:18-141:11 (DSJ Ex. 1). |
| 59.    There was no document retention or destruction policy of any kind in place at Plaintiff. | Wang Dep. at 123:18-22; Batygin Dep. at 21:19-22:6 (DSJ Ex. Nos. 7 and 1). |
| 60.    Ms. Vergara requested that Plaintiff cease communications with her on June 13, 2010. | Wang Dep. at 92:11-22 (DSJ Ex. 7). |

CHRISTIE, PARKER & HALE, LLP

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 61.     Plaintiff did not communicate with Ms. Vergara after June 13, 2010, and he no longer considered himself on good terms with her. | Wang Dep. at 92:11-93:5 (DSJ Ex. 7). |
| 62.     Plaintiff's physical files were all stored in a series of unlocked filing cabinets to which all employees had ready access. | Batygin Dep. at 16:5-17 (DSJ Ex. 1). |
| 63.     None of the physical files containing purported trade secrets were segregated from the non-confidential files, nor were they treated any differently. | Batygin Dep. at 16:5-17 (DSJ Ex. 1). |
| 64.     Neither the electronic or physical files were located in a secure building. Although the exterior to Plaintiff's building was locked, the employees had keys. There was no alarm system, and the door leading to the room where the computers were housed was made of glass. | Batygin Dep. 18:13-25 (DSJ Ex. 1). |
| 65.     Plaintiff never disclosed any written or oral policy regarding the protection of confidential information. | Batygin Dep. at 11:24-12:15, 13:1-25 (DSJ Ex. 1). |

CHRISTIE, PARKER & HALE, LLP

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 66.    Mr. Wang frequently claimed that Plaintiff had nothing to hide and had no secrets. | Batygin Dep. at 14:1-6. (DSJ Ex. 1) |
| 67.    When employees started, Plaintiff did not discuss the treatment of confidential information. | Wang Dep. at 60:19-25 (DSJ Ex. 7). |
| 68.    When employees left, Plaintiff generally failed to conduct any sort of exit interview whereby it reminded the former employee of his or her duties to keep certain information confidential or inquired as to whether the former employee had returned or destroyed any physical or electronic files. | Wang Dep. at 67:3-68:22; Batygin Dep. at 14:7-16:4, 27:24-28:11 (DSJ Ex. Nos. 7 and 1). |
| 69.    Ms. Batygin originally found her position at Plaintiff through a temporary staffing agency. | Batygin Dep. at 35:2-36:19 and Ex. 16 (DSJ Ex. Nos. 1 and 3). |
| 70.    The staffing agency prepared Ms. Batygin for her interview by providing "insider tips" consisting of a list of Plaintiff's customers that she should research. | Batygin Dep. at 35:2-36:19 and Ex. 16 (DSJ Ex. Nos. 1 and 3). |
| 71.    These customers – which Plaintiff now claims are secret – were provided to the staffing agency by one of Plaintiff's employees. | Batygin Dep. at 35:2-36:19 (DSJ Ex. 1). |

-15-

CHRISTIE, PARKER & HALE, LLP

| **Uncontroverted Fact** | **Supporting Evidence** |
|---|---|
| 72.    At no point was this customer list described as secret or confidential. | Batygin Dep. at 35:2-36:19 (DSJ Ex. 1). |
| 73.    Plaintiff never entered into any nondisclosure agreement with the staffing agency. | Batygin Dep. at 36:13-19. (DSJ Ex. 1). |
| 74.    Plaintiff also provided its suppliers with its purportedly confidential customer and product information. | Wang Dep. at 54:5-9, 78:1-9; Batygin Dep. at 44:6-46:20 (DSJ Ex. Nos. 7 and 1). |
| 75.    If one of Plaintiff's items sold well, the supplier would email its other distributors to let them know it could make this same product for them and that the item was selling particularly well at the particular customer.   This was true even if the item had been custom ordered by Plaintiff or another company. | Batygin Dep. at 44:6-46:20; Wang Dep. at 77:23-25, 78:1-9, 124:7-9 (DSJ Ex. Nos. 1 and 7). |
| 76.    Plaintiff did not enter into a single nondisclosure agreement with any of its employees, vendors, contractors, buyers, customers, or suppliers. | Wang Dep. at 66:5-11, 76:25-77:22; Batygin Dep. at 12:19-25, 31:5-32:1, 32:23-33:1, 36:13-19 (DSJ Ex. Nos. 7 and 1); Vergara Decl. ¶ 25; Chen Decl. ¶ 22. |

CHRISTIE, PARKER & HALE, LLP

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 77.    On March 13, 2012, Plaintiff publicly filed with this Court in connection with its reply in support of its motion to amend the scheduling order an Excel Spreadsheet containing file listings from two of Defendants' hard drives that were imaged during discovery.  These file listings identify by name Plaintiff's suppliers, buyers, and customers (page 20); information as to what kind of products each supplier can produce (page 197); and which suppliers provide goods to each customer (page 312). | Dkt. No. 98-3 at Ex. G, excerpts of which are attached as DSJ Ex. No. 6. |
| 78.    On February 3, 2012, Ample propounded Interrogatory No. 5, which asked Plaintiff to identify with specificity any purported economic value of its trade secrets. | Declaration of Steven E. Lauridsen ("Lauridsen Decl.") ¶ 5; DSJ Ex. 4. |
| 79.    Plaintiff's response to Interrogatory No. 5 did not provide any explanation as to how Plaintiff's purported trade secrets derive independent economic value. | Lauridsen Decl. ¶ 6; DSJ Ex. 5. |

-17-

| **Uncontroverted Fact** | **Supporting Evidence** |
|---|---|
| 80.    There are not many factories in China that both make baskets and are large enough to produce the quantity needed by Plaintiff or Defendants.  All of these factories attend the widely known Canton Fair, and they all constantly vie for distributors' business, and in doing so give rival distributors information about competitors and profitable items for profitable customers. | Wang Dep. at 123:23-124:6; Batygin Dep. at 37:7-18, 43:13-46:20 (DSJ Ex. Nos. 7 and 1). |
| 81.    Some products can only be cost-effectively produced by one or two factories due to the limited availability of the source material. | Batygin Dep. at 41:3-42:9 (DSJ Ex. 1). |

CHRISTIE, PARKER & HALE, LLP

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 82. Plaintiff has not alleged in connection with its computer fraud claim the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals; physical injury to any person; a threat to public health or safety; damage affecting a computer used by or for an entity of the United States Government in furtherance of the administration of justice, national defense, or national security; or damage affecting 10 or more protected computers during any 1-year period. | FAC ¶¶ 53-61. |
| 83. Plaintiff has not alleged or produced evidence of any costs associated with Defendants' purported unauthorized access to its computer systems. | FAC ¶¶ 53-61. |
| 84. Plaintiff seeks to recover lost profits purportedly resulting from Defendants' alleged use of Plaintiff's data. | FAC ¶¶ 57, 61. |

-19-

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 85.   Plaintiff has not alleged in connection with its computer fraud claims any involvement of or injury to the United States government, trafficking, or extortion. | FAC ¶¶ 53-61. |
| 86.   Plaintiff alleges that Ms. Vergara and Ms. Chen "accessed [Plaintiff]'s computer system for the purpose of downloading information" and that "[s]uch access was without authorization and/or it exceeded Vergara and Chen's authorized access." | FAC ¶ 54; *see also* FAC ¶¶ 31-32. |
| 87.   Ms. Chen and Ms. Vergara were authorized to access Plaintiff's computer systems – including any data on Ms. Vergara's laptop – during their employment, which is when their access is alleged to have occurred. | Wang Dep. at 21:1-23:3, 23:14-24:10, 85:3-87:12, 89:1-90:16, 128:5-23 (DSJ Ex. 7); FAC ¶ 28. |
| 88.   Plaintiff alleges that it provided a laptop computer containing its trade secrets to Vergara in 2009 for her use in connection with her duties as its employee. | FAC ¶ 28. |
| 89.   Plaintiff disclosed its purported trade secrets to Vergara and Chen during their employment. | FAC ¶ 28. |

CHRISTIE, PARKER & HALE, LLP

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 90.   Defendants have not altered, deleted, damaged, or destroyed any data, computer, computer system, or computer network of Plaintiff. | FAC ¶¶ 53-61; Wang Dep. at 130:12-132:6 (DSJ Ex. 7); Vergara Decl. ¶ 28; Chen Decl. ¶ 25. |
| 91.   There were no technical barriers in place blocking Defendants' access to its computer systems that Defendants overcame. | FAC ¶¶ 53-61; Wang Dep. at 96:19-24, 133:6-20, 134:21-135:1 (DSJ Ex. 7); Batygin Dep. at 17:19-18:12 (DSJ Ex. 1); Vergara Decl. ¶¶ 26-27; Chen Decl. ¶¶ 23-24. |
| 92.   LH alleges that Chen and Vergara breached their duties of loyalty to LH by "secretly establishing a business with defendant Ample in direct competition with Lukasian while they were still employed by Lukasian; transferring their loyalty to Ample; . . . securing preferential rates from vendors based upon their status as Lukasian's agents; copying at least 300,000 of Lukasian's computerized digital files, which included Lukasian Trade Secrets, from Lukasian's computer system for Ample while they were still employed by Lukasian; and using Lukasian's confidential information . . . for their own benefit and the benefit of Ample." | FAC ¶ 87. |

CHRISTIE, PARKER & HALE, LLP

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 93.   "Opportunity buy" is a common phrase frequently used by numerous third parties, including companies like Wal-Mart, to market their products and that Plaintiff does not possess proprietary or trademark rights in it. | Wang Dep. at 137:1-138:4 and Ex. 27 (DSJ Ex. Nos. 7 and 13); DSJ Ex. 14 (Walmart); Batygin Dep. at 48:24-50:21 (DSJ Ex. 1). |

## CONCLUSIONS OF LAW

| Conclusion of Law | Support |
|---|---|
| 1.   Summary judgment is proper where the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." | Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). |
| 2.   As the moving parties, Defendants bear the initial responsibility of informing the district court of the basis for their motion and identifying those portions of the record which they believe demonstrate the absence of a genuine issue of material fact. | *Celotex*, 477 U.S. at 323. |
| 3.   The burden then shifts to LH to set out specific facts showing that there is a genuine issue for trial. | Fed. R. Civ. P. 56(e). |

CHRISTIE, PARKER & HALE, LLP

| **Conclusion of Law** | **Support** |
|---|---|
| 4.    It is not enough for the party opposing a properly supported motion for summary judgment to rest upon the mere allegations or denials of the adverse party's pleadings. | *Id.*; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). |
| 5.    Because LH affirmatively bears the burden on each of the issues presented in Defendants' motion, Defendants can show that they are entitled to summary judgment by simply demonstrating that LH has not put forth sufficient evidence to support its claims. | *Celotex*, 477 U.S. at 322, 325. |
| 6.    Under California law, a trade secret must (1) "derive[] independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) [be] the subject of efforts that are reasonable under the circumstances to maintain its secrecy." | Cal. Civ. Code § 3426.1(d)(1)-(2). |

CHRISTIE, PARKER & HALE, LLP

| **Conclusion of Law** | **Support** |
|---|---|
| 7.    A  plaintiff  asserting  that  it possesses  a  valid  trade  secret  must  be able  to  point  to  specific  actions  taken  to maintain its secrecy. | *See Morton v. Rank Am., Inc.*, 812 F. Supp. 1062, 1075 (C.D. Cal. 1993). |
| 8.    What  is  reasonable  generally varies  with  the  value  of  and  the  risk  to the information. | *See Mattel, Inc. v. MGA Entm't, Inc.*, Case  No.  CV  04-9049  DOC  (RNBx), 2011  U.S.  Dist.  Lexis  85928,  at  *21 (C.D. Cal. Aug. 4, 2011). |
| 9.    Therefore, the question of what is reasonable  is  largely  fact  specific  and will vary from case-to-case. | *In re Providian Credit Card* Cases, 96 Cal. App. 4th 292, 306 (Ct. App. 2002); *Mattel*, 2011 U.S. Dist. Lexis 85928 at *21. |
| 10.    Disclosure  of  information  to visitors,    suppliers,    and    customers without    restriction    or    notices    of confidentiality  weighs  against  trade secret protection. | *Silicone  Image,  Inc.  v.  Analogix Semiconductor, Inc.*, Case No. C-07-00635  JCS,  2007  U.S.  Dist.  Lexis 96073,  at  *48  (N.D.  Cal.  Dec.  20, 2007). |
| 11.    Disclosure  of  information  to those without a "need to know" weighs against protection. | *Bayline Partners L.P. v. Weyerhaeuser Co.*, 31 U.S.P.Q. 2d 1051, 1055 (N.D. Cal. 1994). |
| 12.    Information    being    readily accessible  to  all  employees  with  no restricted    access    to    or    physical segregation  of  information  weighs against protection. | *In re Providian Credit Card Cases*, 96 Cal. App. 4th 292, 304 (Ct. App. 2002); *Delta Filter Corp. v. Morin*, 108 A.D. 2d 991, 993 (N.Y App. Div. 1985). |

CHRISTIE, PARKER & HALE, LLP

| **Conclusion of Law** | **Support** |
|---|---|
| 13.    Having no building security weighs against protection. | *Capsonic Group, Inc. v. PLas-met Corp.*, 361 N.E. 2d 41, 44 (Ill. App. Ct. 1977). |
| 14.    Having no internal controls on document distribution, access, security, or destruction. | *Arco Indus. Corp. v. Chemcast*, 633 F.2d 435, 443 (6th Cir 1980); *MBL Corp. v. Diekman*, 445 N.E. 2d 418, 425 (Ill. App. Ct. 1983). |
| 15.    Not requiring employees, vendors, suppliers or contractors to sign nondisclosure agreements weighs against protection. | *Providian*, 96 Cal. App. at 304; *Bayline Partners L.P. v. Weyerhaeuser Co.*, 31 U.S.P.Q. 2d 1051, 1055 (N.D. Cal. 1994). |
| 16.    Having no notice of confidentiality given to employees, visitors, suppliers, or vendors weighs against protection. | *Providian*, 96 Cal. App. 4th at 304; *VFD Consulting, Inc. v. 21st Servs.*, 425 F. Supp. 2d 1037, 1050-51 (N.D. Cal. 2006). |
| 17.    Not identifying what information or types of information are considered confidential and not marking, or otherwise indicating, information as confidential weighs against protection. | *Providian*, 96 Cal. App. 4th at 304; *MBL*, 445 N.E. 2d at 425. |
| 18.    Not identifying trade secrets either when a nondisclosure agreement is signed or during an exit interview weighs against protection. | *Motorola, Inc. v. Fairchild Camera & Instrument Corp.*, 366 F. Supp. 1173, 1185 (D. AZ 1973). |

-25-

CHRISTIE, PARKER & HALE, LLP

| **Conclusion of Law** | **Support** |
|---|---|
| 19.   Employees being unaware of obligations regarding the confidentiality restrictions, in particular to there being no written policy weighs against protection. | *Pressure Science, Inc. v. Kramer*, 413 F. Supp. 618, 627 (D. Conn. 1976). |
| 20.   Information publicly accessible to a competitor may lose its trade secret protection. | *DVD Copy Control Assoc., Inc. v. Bunner*, 116 Cal. App. 4th 241, 251 (Ct. App. 2004). |
| 21.   In the area of disclosure to external parties, *e.g.*, independent contractors, the courts require greater efforts to maintain secrecy. | TRADE SECRETS PRACTICE IN CAL. § 4.2 (Continuing Education of the Bar, Cal. 2012); BUSINESS TORTS: UNFAIR TRADE §17.04. |
| 22.   A nondisclosure agreement is perhaps the most common trade secret protection step and generally the least expensive to execute. | 1 COULTER BOESCHEN ET AL., BUSINESS TORTS: UNFAIR TRADE §17.11 (2011). |
| 23.   Because Plaintiff has not shown it has taken adequate steps to protect its alleged trade secrets, it does not possess valid trade secrets in that information. | *See Morton v. Rank Am., Inc.*, 812 F. Supp. 1062, 1075 (C.D. Cal. 1993). |
| 24.   LH has the duty to respond to interrogatories truthfully and completely, in a clear and precise manner. | *Weiss v. Chrysler Motors Corp.*, 515 F.2d 449, 456 (2d Cir. 1975). |

CHRISTIE, PARKER & HALE, LLP

| **Conclusion of Law** | **Support** |
|---|---|
| 25.    Because LH has not provided in response to Defendants' interrogatory any facts supporting its contention that its purported trade secrets derive any independent economic value, LH is barred from presenting any new facts supporting its claim in connection with its summary judgment motion. | *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless"). |
| 26.    Plaintiff has not demonstrated that its alleged trade secrets derive independent economic value from being kept secret. | *See* Fed. R. Civ. P. 37(c)(1). |
| 27.    Plaintiff has not demonstrated that it possesses valid trade secrets. | Cal. Civ. Code § 3426.1(d)(1)-(2). |
| 28.    The Computer Fraud and Abuse Act ("CFAA"), codified at 18 U.S.C. § 1030, creates a right of action for private persons injured by various computer crimes. | *See* 18 U.S.C. §1030(g); *see also LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1130-31 (9th Cir. 2009). |

CHRISTIE, PARKER & HALE, LLP

| **Conclusion of Law** | **Support** |
|---|---|
| 29.    Section 1030(g) of the CFAA provides that a "civil action for a violation of this section may be brought only if the conduct involves one of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)." Thus, in order to bring an action under the CFAA, "a private LH must prove that the defendant violated one of the provisions of [18 U.S.C.] § 1030(a)(1)-(7), and that the violation involved one of the factors listed in [18 U.S.C.] § 1030(a)(5)(B)(i)." | *LVRC Holdings*, 581 F.3d at 1131-32. |
| 30.    In evaluating such a claim, "the Court must look for unauthorized access to a protected computer, not to the unauthorized access or use of electronic data." | *Allied N. Am. Ins. Broker. Corp. v. Woodruff-Sawyer*, No. C 04-2527 MJJ, 2005 U.S. Dist. LEXIS 47388, at *14 (N.D. Cal. Feb. 22, 2005). |

CHRISTIE, PARKER & HALE, LLP

| **Conclusion of Law** | **Support** |
|---|---|
| 31.    The only potentially applicable conduct described in 18 U.S.C. § 1030(a)(1)-(7) involves "accessing computers without authorization or in excess of authorization, and then taking specified forbidden actions, ranging from obtaining information to damaging a computer or computer data." | *LVRC Holdings*, 581 F.3d at 1131. |
| 32.    In order to successfully bring an action under this section, a plaintiff must show that the defendant "(1) intentionally accessed a computer, (2) without authorization or exceeding authorized access, and that he (3) thereby obtained information (4) from any protected computer . . . and that (5) there was loss to one or more persons during any one-year period aggregating at least $5,000 in value." | *Id*. at 1132; *see also* 18 U.S.C. § 1030(a)(2). |

CHRISTIE, PARKER & HALE, LLP

| **Conclusion of Law** | **Support** |
|---|---|
| 33.    Although  the  CFAA  does  not define  the  term  "authorization,"  the Ninth  Circuit  has  held  that  "an employer   gives   an   employee 'authorization'  to  access  a  company computer  when  the  employer  gives  the employee permission to use it." | *LVRC Holdings*, 581 F.3d at 1133. |
| 34.    The  court  in  *LVRC*  rejected  the argument  that  "authorization  to  use  a computer  ceases  when  an  employee resolves  to  use  the  computer  contrary  to the employer's interest." | *Id.* at 1133. |
| 35.    "[F]or  purposes  of  the  CFAA, when  an  employer  authorizes  an employee  to  use  a  company  computer subject  to  certain  limitations,  the employee  remains  authorized  to  use  the computer  even  if  the  employee  violates those limitations." | *Id.* |

CHRISTIE, PARKER & HALE, LLP

| Conclusion of Law | Support |
|---|---|
| 36.    Accordingly, "a person who 'intentionally accesses a computer without authorization'...accesses a computer without any permission at all, while a person who 'exceeds authorized access'....has permission to access the computer, but accesses information on the computer that the person is not entitled to access." | *Id.* |
| 37.    As such, the Ninth Circuit rejected the notion that an employee acts "without authorization" once his mental state has changed "from loyal employee to disloyal competitor." | *Id.* at 1134. |
| 38.    The Ninth Circuit rejected the argument that the defendant's conduct "exceeded [the defendant's] authorized access," because it was "undisputed that [the defendant] was entitled to obtain the documents at issue." | *Id.* at 1135 n.7. |
| 39.    "[N]othing in the CFAA suggests that a defendant's authorization to obtain information stored in a company computer is 'exceeded' if the defendant breaches a state law duty of loyalty to an employer." | *Id.* |

CHRISTIE, PARKER & HALE, LLP

| <u>Conclusion of Law</u> | <u>Support</u> |
|---|---|
| 40.   Vergara   and   Chen   had authorization   to   use   Plaintiff's computers  within  the  meaning  of  §§ 1030(a)(2) and (4), and their conduct in accessing   and   downloading   the information  on  the  computer  did  not "exceed[]   authorized   access"   for purposes   of   §§   1030(a)(2)   and   (4). Defendants therefore have not violated the CFAA. | *LVRC Holdings*, 581 F.3d at 1135, n.7. |
| 41.   "Any person who suffers damage or loss by reason of a violation of this section  may  maintain  a  civil  action against   the   violator   to   obtain compensatory  damages  and  injunctive relief or other equitable relief. A civil action  for  a  violation  of  this  section may  be  brought  only  if  the  conduct involves  1  of  the  factors  set  forth  in subclauses (I), (II), (III), (IV), or (V) of subsection  (c)(4)(A)(i).  Damages  for  a violation   involving   only   conduct described  in  subsection  (c)(4)(A)(i)(I) are limited to economic damages. . . ." | 18 U.S.C. § 1030(g). |

CHRISTIE, PARKER & HALE, LLP

| **Conclusion of Law** | **Support** |
|---|---|
| 42. The only factor listed in subsection (c)(4)(A)(i) which is relevant in this action is: "(I) loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value." | *Id.* at § 1030(c)(4)(A)(i). |
| 43. The statute defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." | *Id* at § 1030(e)(11). |
| 44. "Loss" therefore means two things: (1) "'any reasonable costs to the victim' and (2) lost revenue or other damages incurred as a result of an interruption of service." | *See, e.g., Atpac, Inc. v. Aptitude Solution, Inc.*, 730 F. Supp. 2d 1174, 1184 (E.D. Cal. 2010). |

CHRISTIE, PARKER & HALE, LLP

| **Conclusion of Law** | **Support** |
|---|---|
| 45.   "To allege loss under the CFAA, '[LH] must identify impairment of or damage to the computer system that was accessed without authorization.'" | *Id.* |
| 46.   "Cognizable costs also include 'the costs associated with assessing a hacked system for damage[ and] upgrading a system's defenses to prevent future unauthorized access." | *Id.* |
| 47.   LH has not alleged or produced evidence of any costs associated with Defendants' purported unauthorized access to its computer systems.  LH's recovery is therefore limited to "lost revenue or other damages." | *See id.* |
| 48.   A loss of revenue, however, must result from the unauthorized server breach itself, and not from subsequent use of information obtained from the server. | *See id.* at 1184-85 ("The definition of 'loss' itself makes clear Congress's intent to restrict civil actions under subsection (I) to the traditional computer 'hacker' scenario – where the hacker deletes information, infects computers, or crashes networks."). |
| 49.   Thus, "[p]urely economic harm unrelated to the computer systems is not covered by this definition." | *SKF USA, Inc. v. Bjerkness*, 636 F. Supp. 2d 696, 721 (N. D. Ill. 2009) |

CHRISTIE, PARKER & HALE, LLP

| **Conclusion of Law** | **Support** |
|---|---|
| 50.   This type of "loss" is exactly the kind of "loss" for which LH seeks to recover (UF 84), and LH's recovery is therefore barred as a matter of law. | *See Shamrock Foods v. Gast*, 535 F. Supp. 2d 962, 966 (D. Ariz. 2008) ("Thus, the legislative history confirms that the CFAA was intended to prohibit electronic trespassing, not the subsequent use or misuse of information."). |
| 51.   The Comprehensive Computer Data Access and Fraud Act ("CDAFA"), codified at California Penal Code § 502, was enacted to "expand the degree of protection afforded to individuals, businesses, and governmental agencies from tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems." | Cal. Penal Code §502(a). |
| 52.   As it is undisputed that Defendants not have altered, deleted, damaged, or destroyed any of LH's data, computer, computer system, or computer network, the subsections of § 502(c) requiring those types of actions do not apply here. | UF 90; *See, e.g., Facebook, Inc. v. Power Ventures, Inc.*, Case No. -08-05780 JW, 2010 U.S. Dist. LEXIS 93517, at *18-19 (N.D. Cal. July 20, 2010). |

CHRISTIE, PARKER & HALE, LLP

| **Conclusion of Law** | **Support** |
|---|---|
| 53.    The remaining subsections of § 502(c) that may apply are §§ 502(c)(2), (3), and (7).    All three of these subsections "require that Defendants' acts with respect to the computer or computer network be taken without permission." | *See id.* at *19-20. |
| 54.    Although the CDAFA does not define the term "without permission," the Northern District of California has determined that "individuals may only be subjected to liability for acting 'without permission' under Section 502 if they 'access[] or us[e] a computer, computer network, or website in a manner that overcomes technical or code-based barriers.'" | *In re iPhone Application Litig.*, Case No.   11-MD-02250-LHK   2011   U.S. Dist. LEXIS 106865, at *38 (N.D. Cal. Sept. 20, 2011). |
| 55.    "[U]sing a computer network for the purpose that it was designed to serve, even if in a manner that is otherwise improper, is not the kind of behavior that the legislature sought to prohibit when it enacted Section 502." | *Power Ventures*, 2010 U.S. Dist. LEXIS 93517, at *24, 29. |

CHRISTIE, PARKER & HALE, LLP

| **Conclusion of Law** | **Support** |
|---|---|
| 56.    Thus, where there are no technical barriers in place blocking a defendant from accessing the computer or computer network, and where the plaintiff does not allege that the defendant circumvented technical barriers to gain access to the computer or computer network, it is "impossible... for [a] [d]efendant to be liable under the subsections of Section 502 which require a defendant to act 'without permission.'" | *See In re Facebook Privacy Litig.*, 791 F. Supp. 2d at 716. |
| 57.    Defendants are not liable under the subsections of § 502(c) which require Defendants to have acted "without permission." | *Id.* |
| 58.    The only subsection of § 502(c) that does not explicitly require access "without permission" for liability, § 502(c)(8), does not apply here, as LH has not alleged any facts suggesting that Defendants introduced viruses, worms, or other malware into any computer or computer system of LH that "usurp[ed]  the normal operation" of that computer or computer system. | *See, e.g., In re Facebook Privacy Litig.*, 791 F. Supp. 2d at 716. |

-37-

| **Conclusion of Law** | **Support** |
|---|---|
| 59.    A duty of loyalty is imposed by California Labor Code Section 2863, which provides that any employee "who has any business to transact on his own account, similar to that entrusted to him . . . shall always give the preference to the business of the employer." | Cal. Labor Code § 2863. |
| 60.    "California law does permit an employee to seek other employment and even to make some 'preparations to compete' before resigning." | *Fowler v Varian Assocs., Inc.*, 196 Cal. App. 3d 34, 41 (Ct. App. 1987). |
| 61.    To succeed on its claim, LH must prove (1) the existence of a relationship giving rise to a duty of loyalty; (2) one or more breaches of that duty; and (3) damages proximately caused by that breach. | *Huong Que, Inc. v. Luu*, 150k Cal. App. 4th 400, 410 (Ct. App. 2007). |
| 62.    The Uniform Trade Secrets Act "supersedes claims based on the misappropriation of confidential information, whether or not that information meets the statutory definition of a trade secret." | *Mattel, Inc. v. MGA Entertainment, Inc.*, 782 F. Supp. 2d 911, 987 (C.D. Cal. 2011). |

CHRISTIE, PARKER & HALE, LLP

| <u>**Conclusion of Law**</u> | **Support** |
|---|---|
| 63.   Thus, any alleged copying of electronic files or trade secrets does not give rise to a breach of loyalty claim. LH's only remaining basis for this claim is that Chen and Vergara secured preferential rates from vendors based upon their status as LH's agents. | *See id.* |
| 64.   However, there is no evidence showing that LH was proximately damaged by Chen and Vergara entering into a contract with vendors on behalf of themselves or Ample while employed with LH as opposed to doing so after their employment ended. Because LH cannot show any damages that were proximately caused by the alleged breach, it cannot succeed on this claim as a matter of law. | *See Huong Que*, 150k Cal. App. 4th at 410. |
| 65.   California Business and Professions Code § 17200 "provides a private cause of action for any 'unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising.'" | *Cort v. St. Paul Fire & Marine Ins. Cos.*, 311 F.3d 979, 987 (9th Cir. 2002). |

CHRISTIE, PARKER & HALE, LLP

| <u>Conclusion of Law</u> | <u>Support</u> |
|---|---|
| 66.   According   to   the   California Courts of Appeal, "an 'unfair' business practice  occurs  when  it  offends  an established  public  policy  or  when  the practice   is   immoral,   unethical, oppressive,   unscrupulous   or substantially injurious to consumers." | *Smith & Hawken, Ltd. v. Gardendance, Inc.*, 2004 U.S. Dist. LEXIS 22934, at *17 (N.D. Cal. Nov. 5, 2004) (internal citations omitted). |
| 67.   A  defendant's  full  compliance with   the   underlying   law   acts   as   a complete  defense  to  a  Section  17200 claim alleging an unlawful act. | *Cal-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 184 (1999). |
| 68.   Moreover,   the   competitor privilege serves as a defense to conduct when a defendant's "purpose is ***at least in   part***   to   advance   his   interest   in competing with the other." | *Pacific Express, Inc. v. United Airlines, Inc.*, 959 F.2d 814, 819-20 (9th Cir. 1992). |
| 69.   Copyright infringement, cannot serve as a basis for unfair competition as a matter of law. | *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1213 (9th Cir. 1998). |
| 70.   "Opportunity   buy"   is   a commonly  used  phrase  and  does  not form a basis for an unfair competition claim. | UF 93. |

CHRISTIE, PARKER & HALE, LLP

| **Conclusion of Law** | **Support** |
|---|---|
| 71.    Plaintiff cannot succeed on its Cal. Bus. & Prof. Code § 17200 claim because Defendants actions are either privileged or are in compliance with the law. | *See* Cal. Bus. & Prof. Code § 17200. |
| 72.    The law respects the "right to conduct business in competition with that of another." | *Aagard v. Palomar Builders, Inc.*, 344 F. Supp. 2d 1211, 1219 (E.D. Cal. 2004). |
| 73.    To succeed on an intentional interference claim, a LH must demonstrate that "defendant's interference was wrongful by some measure beyond the fact of the interference itself." | *Weststeyn Dairy 2 v. Eades Commodities Co.*, 280 F. Supp. 2d 1044, 1089-90 (E.D. Cal. 2003). |
| 74.    Plaintiff cannot succeed on its intentional interference claim because it has not shown that Defendants' conduct was wrongful. | *Id.* |

Dated: _____

_____
HON. JOHN F. WALTER
UNITED STATES DISTRICT JUDGE

SES PAS1166339.2-*-03/26/12 3:13 PM

CHRISTIE, PARKER & HALE, LLP

-41-